UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALLEN RIDDICK,

       Plaintiff,

vs.                    Case No.  2:03-cv-462-FtM-29SPC

JERRY REIGER, SECRETARY, DEPARTMENT
OF CHILDREN & FAMILIES; RICK HARRY,
EXECUTIVE DIRECTOR, FLORIDA CIVIL
COMMITMENT CENTER; LIBERTY
BEHAVIORAL HEALTH CORPORATION; JAMES
V. CROSBY, JR., SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS; ROBERT
O'CONNOR, WARDEN, DESOTO
CORRECTIONAL INSTITUTION;
CORRECTIONAL OFFICER RIOS; DESOTO
CORRECTIONAL INSTITUTION,

       Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon review of the Motion to Dismiss Plaintiff's Second Amended Complaint filed on behalf of Defendants Rick Harry and Liberty Behavioral Health (Doc. #60-1 hereinafter "Liberty's Motion") and the Motion to Dismiss Second Amended Complaint filed on behalf of Defendants Jerry Reiger, James Crosby, Robert O'Connor, and Officer Rios (Doc. #58 hereinafter "State's Motion").  Plaintiff filed Responses (Docs. #66 and #69) to Liberty's Motion and the State's Motion on August 28, 2006 and August 31, 2006, respectively.  This matter is ripe for review.

I.

*Pro se* Plaintiff, a resident at the Florida Civil Commitment Center ("FCCC"), filed a civil rights Complaint pursuant to 42

U.S.C. § 1983 (Doc. #1), an Amended Complaint (Doc. #9), and a Second Amended Complaint (Doc. #55). The Second Amended Complaint attaches two exhibits. Exhibit #1 is a copy of a contract entitled "Florida Department of Children and Families Standard Contract" executed between Florida Department of Children and Families ("DCF") and the Department of Corrections ("DOC") effective July 1, 2004, Contract #LH 091 (hereinafter "DCF/DOC Contract"). Exhibit #2 is a compilation of Plaintiff's medical reports, medical notes from Plaintiff's medical file, and copies of various diagnostic medical test results. Plaintiff is proceeding on his Second Amended Complaint, which identifies the following as defendants: James Crosby, or his successor, as Secretary of the DOC; Liberty Behavioral Health, Inc., the corporation that operates the FCCC: Rick Harry, Executive Director of the FCCC; Jerry Reiger, Secretary of the DCF; Officer Rios, a DOC officer employed at DeSoto Correctional Institution; and, Robert O'Connor, Warden of Desoto Correctional Institution. The Second Amended Complaint states that Defendant Crosby and Reiger are sued in their official capacities. Because the Second Amended Complaint does not specify whether the remaining defendants are sued in their individual or in their official capacities, the Court will construe it as suing Defendants Harry, O'Connor and Rios in both their individual and official capacities. E.g., Hobbs v. Roberts, 999 F.2d 1526 (11th Cir. 1993).

-2-

The Second Amended Complaint sets forth the following facts which, at this stage of the proceedings, are accepted as true.  On March 31, 2003, Plaintiff was transported pursuant to the DCF/DOC contract to a court appearance in Hillsborough County. (Second Amended Complaint at p. 8, ¶18.[1])  Before entering the DOC van, Defendant Rios conducted a strip search of Plaintiff, and placed restraints on Plaintiff.  (Id. at p 9, ¶20.)  For the duration of the trip, Plaintiff was physically restrained with handcuffs, leg irons, a belly chain, and a black box. (Id.)  During the trip, Defendant Rios "proceeded at speeds in excess of 70 mph, well above the posted 55 mph for that highway [state road 70]." (Id. at p. 14, ¶30.)  Plaintiff avers that Defendant Rios "drove recklessly by swerving in and out of other traffic . . . ." (Id. at ¶31.)  "Defendant Rios failed to secure the physically restrained plaintiff with the available seatbelt." (Id. at ¶32.)  When "Defendant Rios suddenly applied the brakes . . . to avoid hitting another vehicle . . . Plaintiff was thrown against the steel cage that surrounded him inside the van." (Id. at ¶33.)  Plaintiff was "knocked unconscious and further suffered a seizure." (Id. at p. 16, ¶36.)  Additionally, Plaintiff sustained "severe injuries, including lacerations, injury to his upper skull, his left knee, left finders and left hand."  (Id. at ¶35.)  Defendant Rios "immediately stopped the vehicle" and "attempted to treat Plaintiff

---

[1]The cited page numbers refers to the page number that appears on the Court's electronic case filing system (ECF).

for his injuries." (<u>Id.</u> at ¶37.)  Defendant Rios did not call the "paramedics" or take Plaintiff to "a local hospital."  (<u>Id.</u> at ¶37).  As relief, Plaintiff requests unspecified compensatory and "special damages including punitive damages," and unspecified declaratory and injunctive relief.  (<u>Id.</u> at pp. 17-18.)

The Second Amended Complaint also alleges that the DCF/DOC Contract was "devoid of policy and procedures as to the physical care, safety and handling" of FCCC residents. (<u>Id.</u> at p. 7, ¶15.) Further, Plaintiff claims that the DCF/DOC Contract "is devoid of performance standards" and "fails to describes the type, model, and year of vehicles to be utilized to transport" FCCC residents. (<u>Id.</u> at p. 8, ¶¶16-17.)  Nor does the DCF/DOC Contract "include the safety equipment and other devices to be utilized for the overall 'care, custody and control'" of the FCCC residents.  (<u>Id.</u>)  The DCF/DOC Contract does not "authorize [FCCC residents] to be restrained by the use of handcuffs, leg irons, belly chain and black box" when being transported. (<u>Id.</u> at p. 9, ¶19).

Liberally construing the Second Amended Complaint, Plaintiff alleges that: (1) Defendant Rios violated Plaintiff's Fourteenth[2] Amendment rights by  placing restraints on Plaintiff, failing to secure Plaintiff with a seatbelt and driving recklessly, and not

---

[2]Plaintiff's rights as a detainee arise from the Fourteenth Amendment, though the case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is analogous. <u>Cook <em>ex. rel</em> Estate of Tessier v. Sheriff of Monroe County Fla.</u>, 402 F.3d 1092, 1115 (11th Cir. 2005). <u>See also</u> <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1574 (11th Cir. 1985).

bringing Plaintiff to a hospital or calling the paramedics immediately after the accident; and, (2) Defendants Harry, Crosby and Reiger, in their official capacities violated Plaintiff's substantive due process rights.

The State seeks dismissal of the Second Amended Complaint on the grounds of: (1) Eleventh Amendment immunity; (2) the Second Amended Complaint's failure to state an Eighth Amendment claim; and (3) qualified immunity. (Doc. #58.) The Liberty Defendants seek dismissal of the Second Amended Complaint on the grounds that the Second Amended Complaint fails to state a claim pursuant to 42 U.S.C. § 1983 upon which relief can be granted against Defendants Harry or Liberty. (Doc. #60-1.) For the reasons stated herein, the Court will grant Liberty's and the State's respective Motions.

**II.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc). To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must

simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002). While the federal pleading burden is not great, it nonetheless requires fair notice of the claim and the grounds upon which the claim rests. <u>Dura Pharms., Inc. v. Broudo</u>, 125 S. Ct. 1627, 1634 (2005).

The Eleventh Circuit imposes "heightened pleading requirements" for § 1983 cases that involve individuals entitled to assert qualified immunity. <u>Swann v. Southern Health Partners, Inc.</u>, 388 F.3d 834 (11th Cir. 2004)(citing <u>Leatherman v. Tarrant County</u>, 507 U.S. 163 (1993)). The heightened pleading standard is not otherwise applicable. In particular, "the complaint must allege the relevant facts with some specificity." <u>Gonzalez</u>, 325 F.3d at 1235 (internal quotations omitted). "'[M]ore than mere conclusory notice pleading is required . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague an conclusory.'" <u>Gonzalez</u>, <u>Id</u>. (quoting <u>Fullman v. Graddick</u>, 739 F.2d 553, 556-57 (11th Cir. 1984). Rather, a complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts if proved, will overcomes the defense of qualified immunity." <u>Gonzalez</u>, 325 F.3d at 1235(quoting <u>Veney v. Hogan</u>, 70 F.2d 917, 922 (6th Cir. 1995). Unsupported conclusions of law or of mixed law and fact in a complaint will not be accepted by the court. <u>Marsh</u>, 268 F.3d at 1036 n.16. Additionally, the court affords "official conduct a

-6-

presumption of legitimacy." <u>Gonzalez</u>, at 1235(quoting <u>United States</u> <u>Dep't of State v. Ray</u>, 502 U.S. 164, 179 (1991)).

The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.  <u>La Grasta v. First Union Secs.,</u> <u>Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).  Dismissal is warranted unless, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989); <u>Brown v. Crawford County, Ga.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).  The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint.  <u>Marsh</u>, 268 F.3d at 1036 n.16.

## III.

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a defendant deprived the plaintiff of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law.  <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir. 1998); <u>U.S. Steel, LLC v. Tieco, Inc.</u>, 261 F.3d 1275, 1288 (11th Cir.), <u>reh'g and reh'g en banc denied</u>, 277 F.3d 1381 (11th Cir. 2001).  In addition, a plaintiff must establish an affirmative causal connection between the defendant's conduct and

the constitutional deprivation.  <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1059 (11th Cir. 2001)(*en banc*); <u>Swint v. City of Wadley, Ala.</u>, 51 F.3d 988 (11th Cir. 1995); <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

At the time of the incident described in the Second Amended Complaint, Plaintiff was held as a detainee at the FCCC awaiting his Jimmy Ryce trial.[3]  The State of Florida enacted the Jimmy Ryce Act, Florida Statute 394.910-394.913, by which a person determined to be a sexually violent predator[4] is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large."  FLA. STAT. § 394.917(2).  The Jimmy Ryce Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." <u>Westerheide v. State</u>, 831 So.2d 93, 112 (Fla. 2002).  In its statement of "findings and intent," the state legislature said that

_____

[3]Days later, Plaintiff had his Jimmy Ryce trial and was committed as a sexually violent predator.

[4]A "sexually violent predator" is defined by the Act as any person who:

(a) has been convicted of a sexually violent offense; and

(b) suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.

Section 394.912(10), FLA. STAT. (2002).

the Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, Fla. Stat.)" § 94.910, FLA. STAT. (2000). Based upon the "high" "likelihood of sexually violent predators engaging in repeat acts of predatory sexual violence," the legislature's purpose was "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators." Id.

A person who is civilly committed is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So.2d 1113, 1119 (Fla. 2001)(stating "the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments"). Residents at the FCCC who are civilly committed are subject to internal regulations much like those established by the DOC and are considered "totally confined." See FLA. STAT. § 394.912(11). The Court concludes that persons at the FCCC who are civilly committed have constitutional rights at least to the extent as those guaranteed to prisoners.

**Eleventh Amendment Immunity**

Initially, the Court will address the State Defendants contention that they are entitled to Eleventh Amendment Immunity. At the time of incident, Defendant Crosby held the position of the Secretary of DOC, which is currently held by James McDonough; Defendant Reiger held the position of the Secretary of DCF and

Defendants O'Connor and Rios were employed by the DOC.  The Court agrees that to the extent that Plaintiff is suing Defendants Crosby, Reiger, O'Connor, and Rios in their official capacities, they are entitled to Eleventh Amendment immunity.  It is well established that a suit against a defendant governmental officer in his official capacity is the same as a suit against the entity that employs the officer.  See McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997); Kentucky v. Graham, 473 U.S. 159, 165 (1985).  In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits.  Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979).  Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.  See Gamble, 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity.  Id.  Similarly, DCF is the re-designation of the Florida Department of Health and Rehabilitative Services, an agency of the State of Florida.  Doe, 1-13 *Ex Rel.*, Doe Sr. 1-13 v. Bush, 261 F.3d 1037, 1042 n.2 (11th Cir. 2001), cert. denied, 534 U.S. 1104 (2002).  The Eleventh Circuit has held that the Florida Department of Health and Rehabilitative Services is immune under the Eleventh Amendment from a damage suit in federal court.

-10-

Gamble v. Florida Dep't of Health & Rehabilitative Servs., 779
F.2d at 1513.   Thus, the Court will grant the State Defendants'
Motion to Dismiss (Doc. #58) insofar as Plaintiff seeks monetary
damages from the State Defendants in their official capacities
because the Eleventh Amendment clearly bars such damages.

**Fourteenth Amendment Claim**

It is unclear on what basis Plaintiff attributes liability to
Defendants Harry and O'Connor in their individual capacities.   To
the extent such liability is premised upon their respective
supervisory positions, the Second Amended Complaint must be
dismissed.   Other than generally attributing liability to these
Defendants, the Second Amended Complaint contains no factual
allegations that these Defendants personally participated in the
March 31, 2003 incident.   Claims brought pursuant to 42 U.S.C. §
1983 predicated upon the theory of *respondeat superior* are not
recognized.   Gray *ex Rel.* Alexander v. Bostic, 458 F.3d 1295, 1308
(11th Cir. 2006)(citing Hartley v. Parnell, 193 F.3d 1263, 1269
(11th Cir. 1999)).   A defendant's supervisory position, without
more, does not subject him or her to liability.   Monell v. Dep't
of Soc. Servs., 436 U.S. 658, 690-692 (1978);   McDowell v. Brown,
392 F.3d 1283 (11th Cir. 2004);   LaMarca v. Turner, 995 F.2d 1526,
1538 (11th Cir. 1993), cert. denied, 510 U.S. 1164 (1994).   Absent
personal participation, the Court may hold a supervisor liable
**only** if the facts indicate a casual connection between the

-11-

supervisor's actions and the alleged constitutional violation. Gray ex Rel. Alexander, at *8. "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so." Id. The deprivations must also be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Id. In the case at hand, the Second Amended Complaint contains no such allegations. Consequently, the Court finds no allegations to support any constitutional claims against Defendants Harry and O'Connor due to their respective supervisory positions.

### a. Restraints

Plaintiff complains that Defendant Rios placed restraints on Plaintiff, including handcuffs, leg irons, a belly chain, and a black box, which Plaintiff was required to wear for the entire duration of the trip from the FCCC in Arcadia to Plaintiff's court appearance in Hillsborough County, during his court appearance, and throughout his return trip back to the FCCC. (Second Amended Complaint, ¶20.) Plaintiff generally claims that "the use of restraints was for punitive purposes, arbitrary, capricious and further unreasonable, excessive, dangerous and orchestrated in an injurious manner." (Id.) Further, Plaintiff argues that the DCF/DOC Contract does not "authorize" FCCC residents to be retrained. (Id. at ¶19.)

The Court does not find that the use of restraints in the instant matter was done for punitive purposes.   "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are  discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell v. Wolfish, 441 U.S. 520, 540 (1979).  In determining whether restraints are reasonably related to an institution's interest in maintaining security and order, the Court is mindful of the Supreme Court's warning that:

> such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these consideration, courts should ordinarily defer to their expert judgment in such matters. Id. (citations omitted).

Whether plaintiff can show that there is a less restrictive means or a better alternative to the type of restraint is not relevant to an Eighth or Fourteenth Amendment inquiry. Jackson v. Cain, 864 F.2d 1235, 1243 (5th Cir. 1989).  Rather, Plaintiff must demonstrate that Defendants "deliberately as punishment or mindlessly, with indifference to [Plaintiff's] humanity" caused the discomfort Plaintiff sustained while he was handcuffed and shackled. Id. Recognizing that "handcuffs and shackles are restraints commonly used on inmates, even those of preferred status," the court found no constitutional violation existed where

an inmate alleged "wanton pain" from tightly applied handcuffs, shackles and waist chains, noting the absence of any allegations that "great pain" was "deliberately" inflicted, the restraints were of a type "not customarily used," and the inmate was "deliberately treated maliciously and differently" than others in his position. Id. at 1244.

Significantly, at the time of this incident, Plaintiff was a detainee at the FCCC, awaiting the trial court's decision as to whether there was sufficient probable cause to detain Plaintiff as a sexually violent predator, as defined by the Jimmy Ryce Act. The Court acknowledges that the Jimmy Ryce Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So.2d 93, 112 (Fla. 2002) (emphasis supplied). Further, the DCF/DOC Contract notes in the Section entitled "Client to be Served" that "the sexually violent predator population housed [at the FCCC] is extremely dangerous and will generally exhibit antisocial personality features that are not amendable to existing mental health treatment." (Second Amended Complaint, Exhibit #1, at 9, ¶3.a.)

Plaintiff does not allege that the restraints were applied deliberately to cause him pain or injury, were applied incorrectly or too tight, or were not the type customarily used. Consequently, the Court finds no constitutional claim stated with regards to the use of restraints on Plaintiff in connection with

Plaintiff's transportation to his court appearance, during his appearance at court, or on Plaintiff's return trip to the FCCC.

### b.   Failure to Use Seatbelt/Reckless Driving

Plaintiff alleges that Defendant Rios was deliberately indifferent to Plaintiff's safety because Rios did not buckle Plaintiff's seat belt after placing Plaintiff into the DOC van, and Rios drove the van in a reckless manner.

The Supreme Court has established a two-part analysis to govern Eighth Amendment challenges requiring a plaintiff to demonstrate both an objective and subjective component. Farmer v. Brennan, 511 U.S. 834 (1994). First, the objective requirement requires that the condition complained of be "sufficiently serious." Chandler v. Crosby, 379 F.3d 1278, 1279 (11th Cir. 2004) (citing Hudson v. Macmillan, 503 U.S. 1, 8 (1992)). The "challenged condition must be 'extreme.'" Id. (quoting Hudson at 9). The condition must pose "an unreasonable risk of serious harm." Id. (quoting Helling v. McKinney, 509 U.S. 25, 3 (1993)). "It also requires the court to assess whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose _anyone_ unwillingly to such a risk." Id. (quoting Helling at 35).

The second part of analysis requires that the defendant official to have acted "with a sufficiently culpabale state of mind." Id. (quoting Hudson v. Macmillan, 503 U.S. at 8). This

state, known as "deliberate indifference" requires: (1) subjective knowledge of a risk of serious harm (i.e. both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; (3) by conduct more than gross negligence. Chandler; Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005).

The Court finds that the allegations of Second Amended Complaint do not objectively state an Eighth Amendment claim. Although the Eleventh Circuit has not dealt with this issue, the Tenth Circuit when examining a factually similar situation held that an officer's failure to use the available seatbelt on an inmate who was handcuffed and shackled, in violation of stated prison policy, did not objectively give rise to a constitutional violation. Dexter v. Holston, 92 Fed. Appx. 637, 640 (10th Cir. 2004). The Court reasoned that:

> The connection between a failure to seatbelt and the risk of serious injury, even if arguable evident under state tort law, is insufficient for purposes of constitutional analysis. The risk of a motor vehicle accident is dependent upon a host of other factors unrelated to the use of seatbelts . . . The eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted.

Id. at 641. See also Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902; cert. denied sub nom. 528 U.S. 1157 (2000) (holding that a detainee, who became a quadriplegic after he sustained injuries because he was not seat belted in a police vehicle, did not state an Eighth Amendment claim, rather it constituted at most

negligence).   The Tenth Circuit's ruling in this matter is in accord with Supreme Court in which the high court has found that the Constitution does not "guarantee due care on the part of state officials."  County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process").  See also Paul v. Davis, 424 U.S. 693, 701 (1976)(opining that the "Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the states");

Assuming *arguendo* that the Second Amended Complaint sufficiently satisfied the objective prong, the Court, nevertheless, finds no allegations that Officer Rios acted with deliberate indifference.   Plaintiff does not claim that he requested and was denied the use of the seatbelt.  Moreover, based on the allegations of the Complaint it is clear that Plaintiff's injuries resulted from Rios' actions to prevent an accident - - Rios quickly applied the brakes to avoid hitting another car. Arguably, Defendant Rios' actions may have constituted negligence. But, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**c.    Failure to provide medical treatment**

Next, Plaintiff alleges an Eighth Amendment claim for medical indifference.  The Second Amended Complaint states that after the traffic incident, Plaintiff incurred "severe injuries including lacerations, injury to upper skull, his left knee, left fingers, and left hand were severely cut . . . Plaintiff was knocked unconscious and . . . suffered a seizure."  Plaintiff avers that Defendant Rios "immediately stopped the vehicle and . . . attempted to treat Plaintiff . . . [but] Plaintiff was never evaluated by a local hospital nor were paramedics contacted."

To establish an objectively serious deprivation of medical care, a prisoner must establish: (1) an objectively serious medical need, and (2) that the response made to the need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or medical malpractice.  Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).  A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm.  Kelley v. Hicks, 400 F.3d 1282, 1284 n.3 (11th Cir. 2005); Brown, 387 F.3d at 1351; Farrow, 320 F.3d at 1243.

Here, the Second Amended Complaint admits that Defendant Rios "immediately stopped the vehicle" to check on Plaintiff and treat him.  Plaintiff does not aver any physical injuries that

-18-

demonstrated that he needed to be "immediately" taken to the hospital, yet alone that paramedics should have been summoned to the scene.   In fact, the Second Amended Complaint implies that Plaintiff attended the Hillsborough County court hearing without incident and then made the return trip back to the FCCC. Moreover, the medical documents attached to the Second Amended Complaint demonstrate that Plaintiff's did in fact go to the hospital on the same day as the incident.   (See Plaintiff's Amended Complaint, Exhibit #2, Medical Report from Desoto Memorial Hospital dated March 31, 2003, indicating that Plaintiff had a catscan of his head and there were no injuries.)

An inmate who complains that a delay in medical treatment rises to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176 (11th Cir. 1994).   Plaintiff does not claim that he suffered any injuries from a delay in treatment.   Nor does the Court find any suggestion in the medical documents appended to the Second Amended Complaint that Plaintiff suffered any aggravating injuries as a result from being taken to the hospital later that day as opposed to immediately after the incident.   For these reasons, the Court finds that the Second Amended Complaint fails to sufficiently allege an Eighth Amendment claim for deliberate indifference to a serious medical need.

**Substantive Due Process Claim**

Read generously, the Second Amended Complaint asserts that Defendants Harry, Crosby and Reiger, in their official capacities, breached their respective duty to protect Plaintiff's health, safety and welfare. In essence, Plaintiff argues that the Defendants' adoption and/or implementation of the DCF/DOC Contract, which represented an administrative policy, led to a deprivation of Plaintiff's constitutional rights. Plaintiff argues that his substantive due process rights were violated when Plaintiff was placed in DOC's custody for transportation to his outside court hearing since the DCF/DOC Contract by its terms "contains no protocol or other such procedures to minimize risk or . . . treatment required in [an] emergency situation such as the automobile accident described in Plaintiff's Second Amended Complaint." (Plaintiff's Response to Liberty's Motion at 4, Doc. #66.) As set forth previously, Plaintiff sets forth a number of alleged deficiencies in the DCF/DOC Contract. Plaintiff claims that these deficiencies resulted in Plaintiff not being provided with adequate protection on September 8, 2003 while he was being transported to his state court appearance.

Admittedly, state officials have a duty to assume responsibility for an individuals' safety who is placed in their custody[5] and held against their will. County of Sacramento v.

_____

[5]Plaintiff, although civilly committed at the FCCC, is legally in the "custody" of DCF. FLA. STAT. §394.917(2). See also DCF/DOC Contract, Attachment 1, ¶A.1.b(3) and b(4) attached to Plaintiff's

(continued...)

<u>Lewis</u>, 523 U.S. 833, 849 (1998).  To impose § 1983 liability on an official capacity claim, plaintiff must show: (1) that his constitutional rights were violated; (2) that the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.  <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).  Plaintiff must identify the policy or custom that caused the injury, <u>McDowell</u>, 392 F.3d at 1290, and the policy or custom must have been the moving force behind the injury.  <u>Board of County Comm'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 404 (1997).

Initially the Court notes that the DCF/DOC Contract affixed to Plaintiff's Second Amended Complaint is dated <u>after</u> the date of the incident.  Nonetheless, because the Court finds that Plaintiff has not alleged a constitutional deprivation as required to impose liability under § 1983, the Court need not address whether the DCF/DOC Contract as a policy establishes a constitutional violation.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  Defendants' Motion to Dismiss Second Amended Complaint (Doc. #58) filed on behalf of Reiger, Crosby, O'Connor, and Rios

---

[5](...continued)
Second Amended Complaint, Exhibit #1 (acknowledging that FCCC detainees and residents as "individuals" in the "custody" of "DCF").

is **GRANTED** and Plaintiff's Second Amended Complaint is dismissed without prejudice as to the State Defendants.

2.   Defendants' Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #60-1) filed on behalf of Harry and Liberty Behavioral Health, Inc. is **GRANTED** and the Second Amended Complaint is dismissed without prejudice as to the Liberty Defendants.

3.   The Clerk of Court shall: (1) enter judgment accordingly; (2) terminate any pending motions; (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __14th__ day of September, 2006.

_____
JOHN E. STEELE
United States District Judge

SA:   hmk/alj
Copies: All Parties of Record

-22-